William C. Baton
John Basinger
SAUL EWING ARNSTEIN & LEHR LLP
1037 Raymond Blvd., Suite 1520
Newark, NJ  07102
(973) 286-6700

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **VALEANT PHARMACEUTICALS NORTH AMERICA LLC,**<br><br>　　　　**Plaintiff**,<br><br>**v.**<br><br>**CLINICAL DRUG INFORMATION, LLC d/b/a MEDI-SPAN, ELSEVIER INC., FIRST DATA BANK, INC., and TRUVEN HEALTH ANALYTICS LLC,**<br><br>　　　　**Defendants**. | Civil Action No.<br><br>**JURY TRIAL DEMANDED**<br>**(Filed Electronically)** |

## COMPLAINT

Plaintiff Valeant Pharmaceuticals North America LLC ("Valeant" or "Plaintiff"), by its undersigned attorneys, Saul Ewing Arnstein & Lehr LLP, for its complaint against Clinical Drug Information, LLC d/b/a Medi-Span, Elsevier Inc., First Databank, Inc., and Truven Health Analytics LLC (collectively, "Defendants"), alleges as follows:

## PRELIMINARY STATEMENT

1.　　This lawsuit arises from false and misleading information that Defendants knowingly and recklessly include in their pharmaceutical information and pricing compendia concerning a class of gastrointestinal drug products with the active ingredient clidinium bromide/chlordiazepoxide hydrochloride.

2.     Valeant markets and sells Librax®, the trademark and brand name for a drug consisting of 2.5 mg clidinium bromide and 5 mg chlordiazepoxide hydrochloride that has been approved by the U.S. Food and Drug Administration ("FDA") as safe and effective for use in adjunctive therapy in the treatment of peptic ulcers, irritable bowel syndrome, and acute enterocolitis.

3.     Librax is the *only* FDA-approved clidinium bromide 2.5 mg/chlordiazepoxide hydrochloride 5 mg drug ("CB/CH Drug") on the market today. In addition, neither the FDA nor any other governmental authority has found any CB/CH Drug to be pharmaceutically and therapeutically equivalent to Librax.

4.     Defendants operate specialized marketing channels variously known as drug pricing lists, drug pricing compendia, or drug databases  (collectively, "Drug Compendia").

5.     The Drug Compendia are subscription-based software and databases that provide clinical, regulatory, and pricing data about prescription drugs to wholesalers, payers, physicians, insurance companies, pharmacies, pharmacists, and other people and entities in the healthcare industry (collectively, "Users").

6.     The Drug Compendia group together pharmaceutical products having the same amount of the same active ingredients in the same dosage form. Thus, for example, brand-name drugs are grouped in the same listing as any drugs that are or are purported to be generics of that brand-name drug. Users rely on the Drug Compendia's groupings to determine which generic alternatives, if any, have been linked to or associated with a given brand-name product.

7.     When the Drug Compendia convey to the User that a particular generic product is in the same group as its FDA-approved brand-name counterpart, and link the purported generic with its brand-name counterpart, the User concludes that the generic product: (1) has passed the

appropriate industry standard generic equivalency tests, (2) has received approval from the FDA, and (3) is pharmaceutically and therapeutically equivalent to the brand-name product, and as such may be purchased in place of, and substituted for, the branded product. Defendants know all of this.

8.      With respect to Librax, Defendants knowingly, recklessly, and/or negligently classify as generic alternatives to Librax several products that, though they putatively contain the same active ingredient as Librax, are not FDA-approved and have not been deemed therapeutically equivalent to Librax by the FDA or any other governmental authority. Specifically, when a User searches the database for "Librax," the subscriber will see listed along with Librax one or more versions of what purport to be CB/CH Drugs (the "Unapproved Products"), despite the fact that the Unapproved Products (i) have not been evaluated for safety and effectiveness by the FDA, and (ii) have never been approved under the federal Food, Drug and Cosmetic Act ("FDCA").

9.      Defendants' Drug Compendia falsely represent and convey to Users that purported competitor products are FDA-approved generic versions of, or have been determined by the FDA to be pharmaceutically and therapeutically equivalent to, and thus substitutable for, Librax.

10.      This falsity has caused (and continues to cause) millions of patients nationwide to receive unapproved competitor products rather than FDA-approved Librax.

11.      Defendants know that this false and misleading information is causing economic injury to Valeant by shifting prescriptions away from Librax and toward several purported generic competitors to Librax that are *not* FDA approved.

12.     This injury is compounded each time a consumer purchases one of the Unapproved Products as the result of misinformation on the Drug Compendia. FDA approval provides assurance as to the nature and quality of the products at issue, as approval demonstrates to consumers and all market participants that approved products such as Librax are safe and effective.

13.     Indeed, FDA approval provides a benefit to the entire marketplace because it reduces the risk of harm to the public by making clear distinctions between those drugs, like Librax, that have been deemed safe and effective, and other untested products and products that have not undergone the same rigorous review by the FDA.

14.     Defendants' wrongful conduct thus directly harms not only Valeant but also the public, because it allows potentially hazardous products that the FDA has not approved to be placed into the stream of commerce and to make their way into the medicine cabinets of unwitting patients, while also degrading the commercial value of Librax in which Valeant and its predecessors have diligently invested.

15.     Defendants have ignored requests by Valeant to cease and desist their unlawful conduct, and, instead, have continued to list and, as a result, promote and advertise, the Unapproved Products as generic equivalents to Librax, causing significant, irreparable harm to Valeant while putting the public at risk.

16.     Defendants' conduct thus has caused irreparable harm and significant injury to Valeant and the public, including in the State of New Jersey and this District, and will continue to cause such harm unless and until it is enjoined.

17.     Accordingly, Valeant brings this action against Defendants seeking injunctive and monetary relief for (i) false advertising and contributory false advertising under Section 43(a) of

the Lanham Act, 15 U.S.C. § 1125(a); (ii) unfair competition under N.J. Stat. Ann. § 56:4-1 *et seq.*; (iii) common law unfair competition, unfair sales practices, and/or deceptive sales practices; (iv) common law trade libel and product disparagement, (v) tortious interference with business relations and prospective economic advantage; and (vi) negligence.

## PARTIES

18.     Valeant is a Delaware limited liability company with its principal place of business at 400 Somerset Corporate Boulevard, Bridgewater, New Jersey 08807.

19.     Defendant Clinical Drug Information, LLC is a Delaware limited liability company doing business under the assumed name, "Medi-Span," with headquarters at 8425 Woodfield Crossing, Suite 490, Indianapolis, Indiana, 46240.

20.     Defendant Elsevier Inc. is a Delaware corporation with headquarters at 1600 John F. Kennedy Boulevard, Suite 1800, Philadelphia, Pennsylvania 19103.

21.     Defendant First Data Bank, Inc. is a Missouri corporation with headquarters at 701 Gateway Boulevard, Suite 600, South San Francisco, CA 94080.

22.     Defendant Truven Health Analytics LLC is a Delaware limited liability company with headquarters at 1 North Dearborn, Suite 1400, Chicago, IL 60602.

## JURISDICTION AND VENUE

23.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338, and 1367, and 15 U.S.C. § 1121.

24.     This Court has personal jurisdiction because Defendants have engaged in acts or omissions within this State causing injury, have engaged in acts or omissions outside of this State causing injury within this State, and/or otherwise have made or established contacts within this State sufficient to permit the exercise of personal jurisdiction, including, without limitation, by advertising and promoting, or materially participating in the advertising and promotion of, the

Unapproved Products in this State and this District.

25.     Specifically, Defendants sold subscriptions of their online Drug Compendia to prescribers, pharmaceutical wholesalers and distributors, pharmacies, pharmacists, Pharmacy Benefit Managers ("PBMs"), hospitals, providers of electronic medical records systems ("EMRs"), retailers, and insurance companies throughout New Jersey, such that they purposefully directed their activities toward New Jersey.

26.     This action arises out of Defendants' contacts with New Jersey. Defendants' advertising and promotion of, or material participation in the advertising and promotion of, Unapproved Products inducing consumers of the Drug Compendia to prescribe Unapproved Products and not Librax, causing pecuniary harm to Valeant. Through Defendants' conduct, it was reasonably foreseeable that each Defendant would be subjected to this Court's jurisdiction.

27.     Further, each Defendant's intentional conduct in advertising and promoting, or materially participating in the advertising and promotion of, Unapproved Products was directed to physicians and pharmacists in New Jersey. Each Defendant has thus expressly aimed its conduct at New Jersey, and Valeant felt the brunt of the harm in New Jersey.

28.     This Judicial District is a proper venue pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Valeant's claims occurred in this District, including, without limitation, the advertising and promoting of, or the material participation in the advertising and promotion of, the Unapproved Products in this State and this District.

## FACTUAL ALLEGATIONS

29.     Valeant, markets and sells Librax, the *only* CB/CH Drug approved by the FDA to be marketed and sold in the United States for the treatment of acute enterocolitis, peptic ulcers, and irritable bowel syndrome.

30.     Defendants, through their Drug Compendia, advertise and promote, or materially participate in the advertising and promotion of, the Unapproved Products that purport to be CB/CH Drugs, and Defendants classify, group, and list the Unapproved Products in a manner that falsely and misleadingly suggest that they are pharmaceutical and therapeutic equivalents to Librax, that they are FDA-reviewed and approved products, and/or that they are FDA-approved generic versions of Valeant's Librax product.

### *Valeant's FDA-Approved Librax Drug*

31.     As of the filing of this Complaint, the FDA has never approved for safety and efficacy any CB/CH Drug other than Librax.

32.     As part of the FDA approval process for a new drug, the FDA reviews the safety, effectiveness, and quality of the drug and may conduct a premarket inspection of the manufacturer. Patients and healthcare professionals rely on the FDA approval process to ensure that drugs are in fact safe and effective and manufactured in accordance with legally applicable quality standards. Manufacturers and marketers of drugs that lack required approval have not provided the FDA with sufficient evidence demonstrating that their products are safe and effective, and such drugs have also not been subject to a premarket inspection by the FDA to assess manufacturing quality. In contrast, those selling FDA-approved products have made the required showings of safety and efficacy, and are subject to ongoing reporting requirements to the FDA, such as adverse events and field alerts, that enable the agency to monitor potential safety and quality issues.

33.     Valeant is an indirect wholly-owned U.S. subsidiary of a global pharmaceutical company and the  rightful holder of the New Drug Application ("NDA") for Librax (under which

NDA Librax's two authorized generics, distributed by Oceanside Pharmaceuticals and Cameron Pharmaceuticals, also may lawfully be marketed).

34.     Librax has been approved by the FDA for both safety and effectiveness since 1966. Since that time, Valeant and its predecessor-in-interest have worked diligently to protect the market value and goodwill that they created, at significant cost, for Librax.

35.     Until May 2016, however, due to conflicting statements by the FDA, some ambiguity remained in the public record about whether Librax was the subject of an ongoing review under the FDA's Drug Efficacy Study Implementation ("DESI") program, which is designed to test effectiveness for drugs that the FDA previously approved only for safety prior to the enactment of the Hatch-Waxman Act in 1984.

36.     On May 23, 2016, the FDA issued a Public Notice confirming that, as set forth in a 1973 Stipulation, Librax had been approved for safety and effectiveness back in 1966 and was not subject to continued review under DESI. *See* Ex. A.

37.     As of the filing this Complaint, Valeant holds the only FDA product approval (an NDA) for Librax, as confirmed by the FDA's *Approved Drug Products with Therapeutic Equivalence Evaluations*, also known as the "Orange Book," which contains a list of all FDA-approved drugs. The only CD/CH Drug listed in the Orange Book is Librax. Accordingly, it is indisputable that Valeant's Librax is the only FDA-approved CH/CB Drug on the market.

38.     The FDA has not approved any other CB/CH Drug for marketing and sale in the United States for *any* purpose. Specifically, the FDA has not approved any other CB/CH drug as a pharmaceutical equivalent to Librax (containing the same active ingredient(s), dosage form, route of administration, and strength or concentration) and has not approved any other CB/CH

drug as a therapeutic equivalent to Librax (having the same clinical effect and safety profile when administered to patients).

39.     Since acquiring the NDA for Librax, Valeant has built a substantial market for its product among prescribers, pharmaceutical wholesalers and distributors, pharmacies, pharmacists, PBMs, hospitals, EMRs, retailers, insurance companies, and other consumers. Valeant stands to gain substantial future economic benefits from continued sales of Librax to these persons and entities, but it is currently being prevented from realizing these benefits due to Defendants' false and misleading advertising practices.

### Defendants and Their Specialized and Unique Marketing Channels

40.     The Drug Compendia owned and maintained by Defendants are critically important in the prescribing, dispensing, marketing, promotion, and reimbursement of pharmaceutical products in the United States, and in particular of FDA-approved "generic" drugs—that is, drugs that have been reviewed and determined by the FDA to (i) contain the same active/key ingredient, have the same strength, use the same dosage form (*e.g.*, a tablet), and use the same route of administration (*e.g.*, oral) as a brand-name drug, (ii) be pharmacologically equivalent to the brand-name drug, and (iii) be safe and effective for their intended use.

41.     To secure FDA approval as a generic substitute, a generic drug manufacturer or marketer must show that its product is therapeutically equivalent to its relevant brand-name drug, meaning that it is both pharmaceutically equivalent (*i.e.*, same active ingredient(s), dosage form, route of administration, and strength or concentration) and therapeutically equivalent (*i.e.*, that it can be expected to have the same clinical effect and safety profile in patients) to the brand-name drug.

42.     The term "generic" thus has unique meaning in the pharmaceutical context. In 2017, the FDA Reauthorization Act defined "generic drug" in the context of a new competitive generic therapy incentive program as "a drug that is approved pursuant to section 355(j) of this title" (*i.e.*, the Abbreviated New Drug Application ("ANDA") provisions). 21 U.S.C. § 356h(e).

43.     The FDA makes clear on its website that "Generic drugs or medicines become available *only after a rigorous review by FDA* and after a set period of time that the brand-name version has been on the market exclusively."   https://www.fda.gov/Drugs/ResourcesForYou/ Consumers/QuestionsAnswers/ucm100100.htm#q1  (last accessed April 10, 2018) (emphasis added). Thus, in the pharmaceutical context, "generic" does not mean any product that purports to contain the same ingredients as a brand-name drug. Rather, "generic" refers to drugs that have been determined by the FDA to be pharmaceutically and therapeutically equivalent to brand-name drugs and therefore substitutable for those drugs, and users of the Drug Compendia understand the term "generic" to have this meaning.

44.     The Drug Compendia owned, maintained, and licensed by Defendants are used and relied upon nationwide by market participants throughout the pharmaceutical industry— including prescribers, pharmaceutical wholesalers and distributors, pharmacies, pharmacists, PBMs, hospitals, EMRs, retailers, insurance companies, and other healthcare professionals—to evaluate medications that are on the market and to make purchasing, dispensing, and reimbursement decisions.

45.     The Drug Compendia can be and are integrated with other computerized information systems used by group purchasing organizations, hospitals, pharmacies, and insurance companies, allowing all of those entities to, *inter alia*, compare drugs and their prices.

46.     Information from the Drug Compendia, are uploaded into and reflected directly in

10

the computer systems of retail pharmacies and insurance companies across the country on a regular basis, and those entities rely on this information to make decisions regarding the dispensing and reimbursement of drug products.

47.     On information and belief, it is industry practice to consult a Drug Compendium in order to determine which generic alternatives, if any, have been linked to or associated with a given brand-name product prior to dispensing a pharmaceutical product.

48.     On information and belief,  Defendants know that prescribers, pharmaceutical wholesalers and distributors, pharmacies, pharmacists, PBMs, hospitals, EMRs, retailers, insurance companies, and other relevant consumers rely on the Drug Compendia to make prescribing, pharmacy dispensing, formulary management, and product purchasing decisions.

49.     The Drug Compendia classify in the same group pharmaceutical products that have the same amount of the same active ingredients in the same dosage form (*e.g.*, capsules, tablets, etc.) for the same route of administration (*e.g.*, oral, topical, etc.). This grouping of pharmaceutical products is commonly referred to as "linking."  The information relied upon by the Drug Compendia to put drugs into these respective classifications consists solely of the information provided by the drug product's manufacturer or marketer. Based on this information, the product will then receive the same classification as, and be "linked" to, that reference drug.

50.     The Drug Compendia are important for manufacturers and marketers of both brand-name drugs and FDA-approved "generic" drugs—that is, those approved by the FDA as pharmaceutically and therapeutically equivalent to brand-name drugs. For manufacturers of generic drugs especially, listing products on the Drug Compendia is the primary way to inform the market—especially physicians, insurance companies, and pharmacies—that their products are available for prescription, purchase, and dispensing.

11

51.     On information and belief, once a generic drug product is shown by a Drug Compendium to be linked in this way to an FDA-approved brand-name product, physicians, pharmaceutical purchasers, and pharmacists are conditioned and/or trained to, and do in fact, conclude that the purported generic product (1) has passed appropriate industry standard generic equivalency tests, (2) has received FDA approval on the basis of safety and efficacy, and (3) is pharmaceutically and therapeutically equivalent to the brand-name product, and as such may be purchased in place of, and substituted for, the branded product.

52.     On information and belief, based on this linking, pharmacists will decide what generic product can be substituted when filling a prescription, and pharmacy purchasers for all retail, hospital and chain pharmacies nationwide will decide what generic products to stock. Insurance companies will use a Drug Compendium's information to decide reimbursement rates. Moreover, because of the message that this linking conveys, most states encourage or even mandate that the pharmacist substitute for the brand-name product a generic product that a Drug Compendium "links" to the branded product. The majority of insurance companies will not reimburse a pharmacy that dispenses a branded product where a  Drug Compendium shows that a "linked" generic product is available.

53.     Further, a number of state laws mandate the automatic substitution of generic products for brand-name products under state insurance plans, unless the physician specifically prescribes the branded product and explicitly forbids substitution. In fact, if a generic product is available (which pharmacists find through a Drug Compendium's linking), some state Medicaid plans will refuse to pay for a branded product under any circumstances, even in cases where a prescribing physician has explicitly forbidden substitution, meaning that a pharmacy in those circumstances must either persuade the physician to change the prescription to allow the linked

product, incur a financial loss, or refuse to fill the prescription, leaving the patient without the prescribed medication at all.

54.    Manufacturers and marketers of both FDA-approved generic drugs and unapproved products are aware of the importance of this grouping by the Drug Compendia: having their products grouped with branded drugs is often their primary form of marketing and generating sales. Without being improperly linked to brand-name products within the Drug Compendia, the knock-off drugs would not be considered equivalent and substitutable by wholesalers, health and insurance payers, corporate pharmacies, or individual pharmacists.

55.    On information and belief, Defendants are economically motivated to link cheaper alternatives for brand-name drugs—regardless of whether the generic has been approved by the FDA as pharmaceutically and therapeutically equivalent to the brand-name drug. Prescribers, pharmaceutical wholesalers and distributors, pharmacies, pharmacists, PBMs, hospitals, EMRs, retailers, insurance companies, and other healthcare professionals use and rely on a Drug Compendium's linking feature to determine whether there are generic alternatives available for a particular branded product. Defendants seek to persuade these market participants to subscribe to their Drug Compendia by promoting the cost savings that their Drug Compendia's linking feature can promote. Further, Defendants' listing of these additional drugs allows them to publicize and advertise their relationships with additional drug manufacturers, using that publicity to induce additional potential customers to subscribe.

### *Defendants' False and Misleading Marketing of Unapproved Products*

56.    Defendants use the Drug Compendia to advertise and promote, or materially participate in the advertising and promotion of, the Unapproved Products in a manner that falsely and misleadingly suggests that they are FDA-reviewed and approved products, or that they are

FDA-approved generic versions of, or have been found by the FDA to be pharmaceutically and therapeutically equivalent to, Valeant's FDA-approved Librax product. Defendants thus materially mislead market participants throughout the pharmaceutical industry, including prescribers, pharmaceutical wholesalers and distributors, pharmacies, pharmacists, PBMs, hospitals, EMRs, retailers, insurance companies, and other healthcare professionals, and cause them to make purchasing, dispensing, and reimbursement decisions based on the false belief that the Unapproved Products are FDA-approved pharmaceutically and therapeutically equivalent generic versions of Librax when, in fact, they are not.

57.     In determining whether a particular generic product should be classified in the same group as a brand-name drug, Defendants rely on the information provided by the generic product's manufacturer or marketer and do not perform even the most basic due diligence, such as reviewing publicly available information, including whether those products are listed in the Orange Book as FDA-approved, to determine whether the information provided is accurate.

58.     Instead, Defendants choose to incorporate into their respective Drug Compendium, and therefore convey to their Drug Compendium subscribers, precisely the information that manufacturers or marketers provide to it, even when Defendants know or recklessly disregard the information's falsity.

59.     On information and belief, Defendants do not independently verify whether the Unapproved Products advertised and promoted through the Drug Compendia are or have been FDA-reviewed or approved, or found to be pharmacologically and therapeutically equivalent to Librax, despite knowing that this information is material to their users, who reasonably rely on Drug Compendia for accurate information.

60.     Accordingly, Defendants knowingly induce or cause, and/or materially participate

in the advertisement and promotion of the Unapproved Products through their Drug Compendia in a manner that falsely and misleadingly suggests that they are FDA-reviewed and approved products, or that they are FDA-approved generic versions of, or have been found by the FDA to be pharmaceutically and therapeutically equivalent to, Valeant's FDA-approved Librax product. Because of this, market participants throughout the pharmaceutical industry, including prescribers, pharmaceutical wholesalers and distributors, pharmacies, pharmacists, PBMs, hospitals, EMRs, retailers, insurance companies, healthcare professionals are misled into purchasing, dispensing, and reimbursement decisions based on the incorrect belief that the Unapproved Products are FDA-approved, or are generic versions of Librax, when they are not.

61.    For example, a pharmacist who searches for "Librax" in each Defendant's Drug Compendium will see Valeant's FDA-approved Librax alongside Unapproved Products.

62.    These search results do not note that the Unapproved Products have not been approved by the FDA but rather imply that they are generic equivalents of Librax. In fact, when a user requests that a Drug Compendium "Include Generic Equivalents" in a search, each Drug Compendium displays the Unapproved Products. As a result, users are misled into falsely believing that Librax and the Unapproved Products are interchangeable and equivalent, and that the Unapproved Products are approved generic versions of Valeant's FDA-approved Librax product.

63.    Moreover, when searching for Librax, the Drug Compendia link Librax with the Unapproved Products via a cross-reference chart, misleading users into falsely believing that Librax and the Unapproved Products are interchangeable and equivalent, and that the Unapproved Products are approved generic versions of Valeant's FDA-approved Librax product.

64.    This misdirection has (i) reduced the number of prescriptions for and sales of

Librax, and (ii) significantly increased prescriptions for and sales of the Unapproved Products rather than Librax, including as a result of substituting the Unapproved Products at the pharmacy level, thereby preventing Valeant from realizing its potential for sales of Librax to new and existing customers.

65.     On information and belief, Defendants continue to list Unapproved Products in a manner that falsely and misleadingly suggests that they are FDA-reviewed and approved products, or that they are FDA-approved generic versions of, or have been found by the FDA to be pharmaceutically and therapeutically equivalent to, Librax.

### *Defendants' Refusal to Correct Their False and Misleading Information*

66.     Defendants knowingly engage in the wrongful conduct described above despite being made aware that they are listing Unapproved Products purportedly as a generic form of Librax based on false and/or misleading information provided to them by the manufacturers of Unapproved Products. Specifically, in March 2018, Barbara Purcell, Senior Vice President/General Manager of Neurology and Generics at Valeant, notified each Defendant via mail that they were listing Unapproved Products on their Drug Compendia, and that such listing falsely and misleadingly suggests to the marketplace that these other drug products have been approved by the FDA and have been shown to be safe and effective, when in fact they have not.

67.     Defendants have refused to remove the Unapproved Products from the Drug Compendia or otherwise modify the Drug Compendia to prevent the continued dissemination of false and misleading information, namely that the Unapproved Products are FDA-approved, pharmaceutical and therapeutic generic equivalents to Librax that may be interchanged for or prescribed and dispensed instead of Librax. Thus, though Defendants should have been aware since at least 2016 that they were wrongly listing the Unapproved Products as generic

equivalents to Librax, there can be no dispute that Defendants were on notice as of March 2018, yet failed to take any action to correct these misrepresentations.

68.     Defendants know that, by classifying and displaying a putative generic product in the same group as its brand-name counterpart, they are advertising and promoting the generic product to the physicians who might prescribe it and pharmacists who might dispense it. Defendants therefore know that they are advertising and promoting, or are materially participating in the advertising and promotion of, the Unapproved Products as alternatives to Librax.

69.     Defendants' listing, advertising, and promotion of, or material participation in the advertising and promotion of, the Unapproved Products on and through their respective Drug Compendia include false, unfair, deceptive, untrue, and misleading claims and suggestions about those products.

70.     Defendants' conduct has the tendency to deceive and, in fact, does deceive healthcare providers, prescription drug formulary providers, managed care organizations, insurers, pharmacies, pharmacists, and others into believing that the Unapproved Products are FDA-reviewed and approved products, and/or that they have been found by the FDA to be pharmaceutically and therapeutically equivalent (*i.e.*, generics) to Valeant's FDA-approved Librax product.

71.     This conduct has the tendency to deceive and does deceive healthcare providers, prescription drug formulary providers, managed care organizations, insurers, pharmacies, pharmacists, and others that the Unapproved Products are FDA-reviewed and approved products, or that they are FDA-approved generic versions of, or have been found by the FDA to be pharmaceutically and therapeutically equivalent to, Valeant's FDA-approved Librax product.

72.     Further, because there are two authorized generic CB/CH Drugs on the market, healthcare providers, prescription drug formulary providers, managed care organizations, insurers, pharmacies, pharmacists, and other users that rely on the Drug Compendia are not able to differentiate between FDA-approved generics and all other CB/CH knock-off drugs that enter the market.

73.     Relying upon this misinformation, healthcare providers, prescription drug formulary providers, managed care organizations, insurers, pharmacies, pharmacists, and patients, including in New Jersey and this District, prescribe and purchase the Unapproved Products rather than Valeant's FDA-approved Librax product.  Defendants' wrongful acts harm both Valeant and the public by facilitating the sales of potentially hazardous products, while also degrading the commercial value of Librax in which Valeant and its predecessors have invested substantial time and resources.

### Defendants' Cause of Economic Injury to Valeant

74.     Defendants' actions complained of herein have caused injury to Valeant, including by (i) reducing the number of prescriptions for and sales of Librax, and (ii) increasing the number of prescriptions for and sales of the Unapproved Products rather than Librax. This conduct is expected to continue to cause such injury in the future unless and until it is enjoined.

75.     For example, according to the most recent Symphony market sales data, in 2016, the sales of the Unapproved Products accounted for approximately 46% of sales in the U.S. market.  Between January and September of 2017, sales of the Unapproved Products increased to approximately 56% of sales in the U.S. market.  The Unapproved Products would not have achieved remotely these market shares absent physicians, insurance companies, pharmacies, pharmacists, and others who subscribe to and rely upon the Drug Compendia having been misled

to believe that the Unapproved Products are FDA-approved, pharmaceutical and therapeutic generic equivalents to Librax.

76.     As a direct and proximate result of Defendants' actions, Valeant also has suffered and continues to suffer irreparable injury for which there is no adequate remedy at law. Absent injunctive relief, Valeant will continue to suffer such injury.

77.      Defendants' foregoing acts have occurred in interstate commerce and in a manner affecting interstate commerce. A significant portion of Defendants' foregoing acts took place in, or caused harm in, the state of New Jersey and this District, among other places.

78.     The foregoing wrongful acts by Defendants have been willful, deliberate, and in bad faith, or in reckless disregard of, or with callous indifference to, Valeant's rights.

79.     Further, because Valeant has built a substantial market for that product among prescribers, pharmaceutical wholesalers and distributors, pharmacies, pharmacists, PBMs, hospitals, EMRs, retailers, insurance companies, and other relevant consumers, Valeant has a reasonable probability of future economic benefits from continued sales of Librax to these persons and entities.

80.     By falsely and misleadingly suggesting that the Unapproved Products are FDA-reviewed and approved products, or that they are generic versions of, or pharmaceutically and therapeutically equivalent to, Librax, and can be purchased and dispensed in place of, and substituted for, Librax, Defendants, through their Drug Compendia, improperly and unlawfully prevent Valeant from continuing to realize its potential for sales of Librax to new and existing customers.

81.      Defendants' misrepresentations have disrupted existing and potential business relationships between Valeant and its actual and potential customers, thereby injuring Valeant in

the form of lost sales and lost sales opportunities.

82. Additionally, Defendants owe a duty of care to Valeant, which is part of an identifiable class—marketers and sellers of prescription drugs about which Defendants, through their Drug Compendia, provide clinical, regulatory, and pricing data to their consumers—which Defendants know or have reason to know is likely to suffer damages from their negligent conduct.

83. Defendants breached their duty of care to Valeant when they (1) falsely and misleadingly stated or suggested that the Unapproved Products are FDA-reviewed and approved products, or that they are generic versions of, or pharmaceutically and therapeutically equivalent to, Librax, and can be purchased and dispensed in place of, and substituted for Librax; (2) failed to independently verify whether the Unapproved Products advertised and promoted through the Drug Compendia are or have been FDA-reviewed or approved, or found to be pharmaceutically and therapeutically equivalent to Librax; and (3) refused to investigate or correct their listing of the Unapproved Products when notified of this false advertising by Valeant.

84. This breach of duty has proximately caused Valeant economic harm, namely, competitive and commercial injury, lost profits and lost sales and lost sales opportunities.

**COUNT I:**
**FALSE ADVERTISING**
**LANHAM ACT, 15 U.S.C. § 1125(A)**

85. Valeant repeats and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

86. Defendants' conduct described above involves false and misleading descriptions or representations of fact in commercial advertising or promotion, made in interstate commerce, that misrepresent the nature, characteristics, and qualities of Defendants' or another's goods, services, and commercial activities, that both deceive and have the capacity to deceive a

substantial segment of relevant and potential consumers.

87.     More particularly, Defendants misrepresent the nature, characteristics, and qualities of the Unapproved Products in their Drug Compendia, in a manner that states or suggests to healthcare professionals, prescribers, pharmaceutical wholesalers and distributors, pharmacies, pharmacists, PBMs, hospitals, EMRs, retailers, insurance companies, patients, and others in the relevant consumer market that the Unapproved Products are FDA-approved products, or are FDA-approved generic versions and/or are pharmaceutically and therapeutically equivalent to Valeant's Librax product, and that the Unapproved Products may be purchased and dispensed in place of, and substituted for Librax, even though that is not the case.

88.     Defendants' conduct noted above was and is material, in that it was and is likely to influence (and does influence) consumers' purchasing decisions, including (i) the prescribing behavior of physicians in this District and elsewhere; (ii) the purchasing and dispensing behavior of pharmaceutical wholesalers and distributors, pharmacies, and pharmacists in this District and elsewhere; and (iii) the behavior of governmental and private insurance companies in this District and elsewhere, who have been misled into believing that the Unapproved Products are generic alternatives to Librax.

89.     Defendants' conduct has caused and is likely to continue to cause damage to Valeant and the public, and, unless restrained, will further damage Valeant and the public.

90.     Defendants' conduct is causing immediate and irreparable competitive and commercial injury to Valeant and will continue to cause such injury unless enjoined by this Court.

91.     Defendants' acts of false advertising are willful, deliberate, and in bad faith.

92.     Valeant has no adequate remedy at law.

93.     Valeant is entitled to injunctive relief and to recover up to three times its actual damages and/or an award of Defendants' profits, as well as costs and Valeant's reasonable attorneys' fees, under 15 U.S.C. §§ 1116–17.

**COUNT II:**
**CONTRIBUTORY FALSE ADVERTISING**
**LANHAM ACT, 15 U.S.C. § 1125(A)**

94.     Valeant repeats and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

95.     Manufacturers of Unapproved Products falsely and misleadingly represent to and through the Drug Compendia that the Unapproved Products are FDA-approved products, or are FDA-approved generic versions and/or are pharmaceutically and therapeutically equivalent to Valeant's Librax product, and that the Unapproved Products may be purchased and dispensed in place of, and substituted for Librax, even though that is not the case.

96.     Defendants do not independently verify the false and misleading assertions by the manufacturers of the Unapproved Products, or perform even the most basic due diligence by taking into account publicly available information to determine whether these products have received FDA approval.  Defendants continue this conduct even though they have been notified that manufacturers of Unapproved Products are providing false and misleading information to Defendants, which is in turn disseminated through the Drug Compendia.

97.     The conduct described above involves false and misleading descriptions or representations of fact in commercial advertising or promotion, made in interstate commerce, that misrepresent the nature, characteristics, and qualities of the Unapproved Products manufacturers' or another's goods, services, and commercial activities, that both deceive and have the capacity to deceive a substantial segment of relevant and potential consumers.

98.     The conduct noted above was and is material, in that it was and is likely to influence relevant consumers' purchasing decisions, including (i) the prescribing behavior of physicians in this district and elsewhere; (ii) the purchasing and dispensing behavior of pharmaceutical wholesalers and distributors, pharmacies, and pharmacists in this District and elsewhere; and (iii) the behavior of governmental and private insurance companies in this District and elsewhere, who have been misled into believing that the Unapproved Products are generic alternatives to Librax.

99.     Defendants knowingly induce or cause, and/or materially participate in the false and misleading advertising and promotion of the Unapproved Products as FDA-approved products, or as FDA-approved generic versions and/or as pharmaceutically and therapeutically equivalent to Valeant's Librax product, and as products that may be purchased and dispensed in place of, and substituted for Librax, even though that is not the case.

100.     Defendants' conduct has caused and is likely to continue to cause damage to Valeant and the public, and, unless restrained, will further damage Valeant and the public.

101.     Defendants' conduct is causing immediate and irreparable competitive and commercial injury to Valeant and will continue to cause such injury unless enjoined by this Court.

102.     Defendants' acts of contributory false advertising are willful, deliberate, and in bad faith.

103.     Valeant has no adequate remedy at law.

104.     Valeant is entitled to injunctive relief and to recover up to three times its actual damages and/or an award of Defendants' profits, as well as costs and Valeant's reasonable attorneys' fees, under 15 U.S.C. §§ 1116–17.

## COUNT III:
## UNFAIR COMPETITION
## N.J. STAT. ANN. § 56:4-1 *ET SEQ.*

105.    Valeant repeats and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

106.    The conduct described above and throughout this Complaint violates N.J. Stat. Ann. § 56:4-1 *et seq*.

107.    Defendants' conduct described above involves false and misleading descriptions or representations of fact in commercial advertising or promotion, made in interstate commerce, that misrepresent the nature, characteristics, and qualities of Defendants' or another's goods, services, and commercial activities, that both deceive and have the capacity to deceive a substantial segment of relevant and potential consumers.

108.    Defendants' deception and intended deception was and is material, in that it was and is likely to influence (and does influence) consumers' purchasing decisions.

109.    Defendants' conduct has caused and is likely to continue to cause damage to Valeant and the public, and, unless restrained, will further damage Valeant and the public.

110.    Defendants' conduct is causing immediate and irreparable competitive and commercial injury to Valeant, to its goodwill and reputation, and will continue to cause such injury unless enjoined by this Court.

111.    Defendants' actionable conduct is willful, deliberate, and in bad faith.

112.    Valeant has no adequate remedy at law.

113.    Valeant is entitled to injunctive relief and to recover up to three times its actual damages under N.J. Stat. Ann. § 56:4-2.

**COUNT IV:**
**COMMON LAW UNFAIR COMPETITION, UNFAIR**
**SALES PRACTICES AND/OR DECEPTIVE SALES PRACTICES**

114.    Valeant repeats and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

115.    The conduct described above and throughout this Complaint constitutes unfair competition, unfair sales practices, and deceptive trade practices under the common law of the State of New Jersey.

116.    Defendants' conduct described above involves false and misleading statements of fact that misrepresent the nature, characteristics, and qualities of the Unapproved Products, and both deceives and has the capacity to deceive a substantial segment of consumers and potential consumers for Valeant's Librax.

117.    Defendants' deception and intended deception was and is material, in that it was and is likely to influence (and does influence) consumers' purchasing decisions.

118.    Defendants' commercial advertising claims have caused and are likely to continue to cause damage to Valeant and the public, and, unless restrained, will further damage Valeant and the public.

119.    Defendants' conduct is causing immediate and irreparable competitive and commercial injury to Valeant, to its goodwill and reputation, and will continue to cause such injury unless enjoined by this Court.

120.    Defendants' actionable conduct is willful, deliberate, and in bad faith.

121.    As a result of Defendants' action, Valeant has suffered competitive and commercial injury and is entitled to damages.

## COUNT V:
## <u>TRADE LIBEL AND PRODUCT DISPARAGEMENT</u>

122.   Valeant repeats and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

123.   The conduct described above and throughout this Complaint constitutes common law trade libel and product disparagement.

124.   Defendants' conduct described above involves statements of fact that misrepresent the nature, characteristics, and qualities of Librax, namely that Librax is no different than less expensive Unapproved Products.

125.   These statements are false and made with reckless disregard for the truth or falsity of the statements.  Defendants do not independently verify—or even conduct the most basic due diligence on—whether the Unapproved Products advertised and promoted through the Drug Compendia are or have been FDA-reviewed or approved, or found to be pharmaceutically or therapeutically equivalent to Librax. Further, Defendants has been notified that the Unapproved Products are not FDA-approved generic equivalents, but Defendants continue to list them in a false and misleading manner.

126.   As a result of Defendants' actions, Valeant has suffered competitive and commercial injury and is entitled to damages. Specifically, Valeant suffered lost sales, lost sales opportunities, and disruption to existing and potential business relationships between Valeant and its actual and potential customers as a result of Defendants' misconduct. Further, Valeant has suffered reputational damage and loss of goodwill based on Librax's association with the Unapproved Products, which have not been approved by the FDA as being pharmaceutically and therapeutically equivalent to it, and thus may be of lesser quality.

**COUNT VI:**
**TORTIOUS INTEREFERENCE WITH BUSINESS**
**RELATIONS AND PROSPECTIVE ECONOMIC ADVANTAGE**

127.   Valeant repeats and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

128.   Since acquiring the NDA for Librax, Valeant has built a substantial market for that product among prescribers, pharmaceutical wholesalers and distributors, pharmacies, pharmacists, PBMs, hospitals, EMRs, retailers, insurance companies, and other relevant consumers.

129.   Valeant has a reasonable probability of future economic benefits from continued sales of Librax to these persons and entities.

130.   Defendants know that prescribers, pharmaceutical wholesalers and distributors, pharmacies, pharmacists, PBMs, hospitals, EMRs, retailers, insurance companies, and other relevant consumers rely on the Drug Compendia to make prescribing, pharmacy dispensing, formulary management, and product purchasing decisions. Indeed, Defendants promote the Drug Compendia for this express purpose.

131.   Defendants also know that Valeant, a marketer and seller of Librax, has an expectation of a commercial benefit from prescribers, pharmaceutical wholesalers and distributors, pharmacies, pharmacists, PBMs, hospitals, EMRs, retailers, insurance companies, and other relevant consumers.

132.   By falsely and misleadingly stating or suggesting that the Unapproved Products are FDA-reviewed and approved products, or that they are generic versions of, or pharmaceutically and therapeutically equivalent to, Librax, and can be purchased and dispensed in place of, and substituted for Librax,  Defendants, through their Drug Compendia, improperly

27

and unlawfully prevent Valeant from continuing to realize its potential for sales of Librax to new and existing customers.

133.    Defendants' misrepresentations have disrupted existing and potential business relationships between Valeant and its actual and potential customers, thereby injuring Valeant in the form of lost sales and lost sales opportunities.

**COUNT VII:**
**NEGLIGENCE**

134.    Valeant repeats and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

135.    Valeant is part of an identifiable class—marketers and sellers of prescription drugs about which Defendants provide clinical, regulatory, and pricing data to prescribers, pharmaceutical wholesalers and distributors, pharmacies, pharmacists, PBMs, hospitals, EMRs, retailers, and insurance companies—that Defendants know or have reason to know is likely to suffer from damages to from their conduct related to their Drug Compendia.

136.    Defendants thus owe a duty of care to Valeant to adhere to a standard of reasonable care in advertising prescription drugs through their Drug Compendia.

137.    Defendants breached that duty of care to Valeant when they falsely and misleadingly stated or suggested that the Unapproved Products are FDA-reviewed and approved products, or that they are generic versions of, or pharmaceutically and therapeutically equivalent to, Librax, and can be purchased and dispensed in place of, and substituted for Librax.

138.    Defendants also breached their duty of care to Valeant when they did not independently verify—or even conduct the most basic due diligence on—whether the Unapproved Products advertised and promoted through their Drug Compendia are or have been FDA-reviewed or approved, or found to be pharmaceutically or therapeutically equivalent to

Librax, despite knowing that the information they provide through the Drug Compendia are material to their customers, who reasonably rely on the Drug Compendia for accurate information.

139.    Defendants further breached their duty of care to Valeant when they did not correct or investigate their listing of Unapproved Products after Valeant notified them of such listing.

140.    Defendants' breach of their duty of care proximately caused Valeant—and Valeant has suffered as a result—economic harm, namely, competitive and commercial injury, lost profits and lost sales and lost sales opportunities.

## **<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Valeant demands judgment in its favor, as follows:

1.    That Defendants, their parents, subsidiaries, affiliates, principals, employees, agents, officers, directors, shareholders, attorneys, representatives, successors, and assigns, and all persons in active concert and participation with them or any of them:

    A.    Be preliminarily and permanently enjoined from listing or otherwise advertising or promoting, or participating in the advertising or promotion of, the Unapproved Products within each Drug Compendium;

    B.    Be preliminarily and permanently enjoined from linking the Unapproved Products to Librax within each Drug Compendium;

    C.    Be preliminarily and permanently enjoined from publishing or otherwise disseminating to relevant consumers and/or the public any false, untrue, unfair, deceptive, or misleading statements concerning Librax or the Unapproved Products, or otherwise engaging in or participating in false, untrue, unfair, deceptive, or misleading advertising concerning, or unfair competition with,

Librax or the Unapproved Products; and

D.      Be ordered to issue corrective advertising explaining the lack of FDA review or approval of the Unapproved Products, and the fact that the FDA does not consider them to be generic equivalents of Librax, to all subscribers to and users of each Drug Compendium, and by posting such retractions on their websites and social media account home pages for at least six (6) months.

2.      That  Defendants be directed to file with this Court and serve upon Valeant within thirty (30) days of entry of such judgment a report in writing and under oath setting forth in detail the manner and form in which Defendants have complied with the above.

3.      That an accounting be ordered and that Valeant be granted the amount of  Defendants' profits realized and/or of the actual and/or enhanced damages sustained by Valeant in consequence of Defendants' unlawful acts as found by the Court, together with such restitution, punitive and/or exemplary damages permitted by law, and appropriate interest on such damages.

4.      That Valeant be granted its costs and reasonable attorneys' fees.

5.      That Valeant be granted any additional relief that this Court deems just and proper.

## JURY TRIAL DEMAND

Valeant respectfully demands a jury trial pursuant to Rule 38(b) of the Federal Rules of Civil Procedure on all claims and issues so triable.

Dated: April 23, 2018                    By: s/ William C. Baton
                                             William C. Baton
                                             John Basinger
                                             SAUL EWING ARNSTEIN & LEHR LLP
                                             1037 Raymond Blvd., Suite 1520
                                             Newark, NJ  07102
                                             (973) 286-6700

                                             *Attorneys for Plaintiff*
                                             *Valeant Pharmaceuticals North America*
                                             *LLC*

31

## CERTIFICATION PURSUANT TO L. CIV. R. 11.2

I hereby certify that, to the best of my knowledge, the matter in controversy is not the subject of any other action pending in any court, or any arbitration, or administrative proceeding, except that Plaintiff and its FDA-approved Librax product, which are at-issue in this matter, are also involved in the following matters against the manufacturers and marketers of the Unapproved Products:

1. *Valeant Pharmaceuticals North America LLC v. Belcher Pharmaceuticals, LLC, Virtus Pharmaceuticals LLC and Virtus Pharmaceuticals Opco II, LLC*, United States District Court for the Northern District of California, Civil Action No. 17-CV-06731 (RS) (asserting claims for false advertising under the Lanham Act, unfair competition under Cal. Bus. & Prof. Code § 17200, unfair competition, and false and misleading statements under Cal. Bus. & Prof. Code § 17500);

2. *Valeant Pharmaceuticals North America LLC v. Bi-Coastal Pharmaceuticals Corp. and Bi-Coastal International Pharma LLC*, United States District Court for the Northern District of California, Civil Action No. 18-CV-00354 (RS) (asserting claims for false advertising under the Lanham Act, unfair competition under Cal. Bus. & Prof. Code § 17200, unfair competition, and false and misleading statements under Cal. Bus. & Prof. Code § 17500);

3. *Valeant Pharmaceuticals North America LLC v. ECI Pharmaceuticals LLC*, United States District Court for the Northern District of California, Civil Action No. 18-CV-00355 (RS) (asserting claims for false advertising under the Lanham Act, unfair competition under Cal. Bus. & Prof. Code § 17200, unfair competition, and false and misleading statements under Cal. Bus. & Prof. Code § 17500);

4. *In the Matter of Certain Clinidium Bromide and Products Containing Same*, United States International Trade Commission, No. 337-TA-1109 (alleging violations of section 337 of the Tariff Act of 1930 based upon the importation into the United States or the sale after importation of certain clidinium bromide and products containing same by reason of unfair acts or methods of competition, the threat or effect of which is to destroy or substantially injure an industry in the United States).

I further certify that, to the best of my knowledge, the matter in controversy is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

Dated: April 23, 2018        By: <u>s/ William C. Baton</u>
                William C. Baton
                John Basinger
                SAUL EWING ARNSTEIN & LEHR LLP
                1037 Raymond Blvd., Suite 1520
                Newark, NJ  07102
                (973) 286-6700

*Attorneys for Plaintiff*
*Valeant Pharmaceuticals North America*
*LLC*

# EXHIBIT A

Center for Drug Evaluation and Research
Food and Drug Administration
Silver Spring, MD 20993-0002

## NOTICE TO DOCKET 1975-N-0336

### LIBRAX, DESI 10837

Date:        May 23, 2016

From:        Thomas Cosgrove, J.D.
             Director (Acting)
             Office of Compliance
             Center for Drug Evaluation and Research
             Food and Drug Administration

Subject:     Librax, Docket 1975-N-0336 (formerly 75N-0184); DESI 10837

Through:     Kathleen Anderson, Pharm.D.
             Director (Acting)
             Office of Unapproved Drugs and Labeling Compliance
             Office of Compliance

             Gail Bormel, R.Ph., J.D.
             Director
             Division of Prescription Drugs
             Office of Unapproved Drugs and Labeling Compliance
             Office of Compliance

             Judy Leon, J.D.
             Branch Chief (Acting)
             Prescription Drugs Branch
             Division of Prescription Drugs
             Office of Unapproved Drugs and Labeling Compliance
             Office of Compliance

As set forth in the Stipulation for Dismissal in Hoffman-La Roche, Inc. v. Richardson, et. al,
Civil Action 11-73 (D.N.J. August 2, 1973), "[a] new drug application for Librax was
approved by the Food and Drug Administration on September 1, 1966. At that time, pursuant
to the 1962 New Drug Amendments, the Food and Drug Administration determined that
Librax was safe and effective for the indications set forth in its labeling." As such, Librax is
not subject to review under DESI.